**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IGLOO PRODUCTS CORP., *Plaintiff*, v. ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, *Defendant*. | ) | No. 26 C 3968 Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION & ORDER**

From October 2021 to October 2025, Plaintiff Igloo Products Corp. ("Igloo") and Defendant Allianz Global Risks US Insurance Company ("Allianz") entered into a series of contracts that required Allianz to defend Igloo in certain legal actions. (*See* Dkt. 1 ¶ 11). In 2025, Igloo customers filed five individual class actions and one consolidated class action alleging that Igloo manufactured and distributed defective coolers. (*Id*. ¶ 15). Allianz declined to defend Igloo in these lawsuits. Subsequently, Igloo brought this three-count lawsuit, alleging that Allianz breached its contractual duty to defend Igloo in the underlying lawsuits. (*Id*.) Igloo seeks damages in Counts I and II for Allianz's alleged breach of the duty to defend the five individual class actions and the consolidated class action, respectively. (*Id*. ¶¶ 43-49). Igloo seeks a declaratory judgment in Count III alleging that Allianz has a duty to defend Igloo against the consolidated class action. (*Id*. ¶¶ 50-55). Allianz moves to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 13). For the reasons below, the Court grants in part and denies in part Allianz's Motion. It GRANTS dismissal only as to two of the underlying complaints nestled into Count I. The Court

DENIES dismissal as to the remaining three underlying individual class actions in Count I, and as to Counts II and III in full.

## BACKGROUND

### I. The Underlying Class Actions

Igloo manufactures coolers. (Dkt. 1 ¶ 2). In 2025, purchasers of Igloo coolers filed five individual class actions and one consolidated class action against Igloo . (*Id.* ¶ 15). All of these lawsuits alleged that Igloo's Flip & Tow 90 QT Coolers had a defective handle that injured users' fingers. (*Id.*) The Court refers to these six lawsuits as: (1) the Trainor Action, (2) the Zannettino Action, (3) the Holton/Miranda Action, (4) the Castellano Action, (5) the Nguyen Action, and (6) the Consolidated Class Action. Although the underlying plaintiffs in each of these cases alleged similar harms, their claims are not identical.

The Trainor Action—which the plaintiff voluntarily dismissed in favor of joining the Zannettino Action—claimed that she had been pinched multiple times. (*Id.* ¶ 17; Dkt. 13-1 ¶ 22). When it added Trainor as a named plaintiff, the Zannettino Action incorporated her allegations. (Dkt. 13-2 ¶ 50). The underlying plaintiffs in the Holton/Miranda Action, Kelsea Holton and Luis Miranda, alleged that the Coolers pinched Miranda several times. (Dkt. 1 ¶ 18; Dkt. 13-3 ¶ 8). Robert Castellano—the underlying plaintiff in the Castellano Action—maintained that his son was pinched but not injured. (Dkt. 1 ¶ 19; Dkt. 13-4 ¶¶ 43-44). Vy Nguyen, representing the Nguyen Action, claims that she was "frequently" pinched and stopped using the Cooler "to avoid being pinched [so] that she and her child were not injured by it." (Dkt. 1 ¶ 20; Dkt. 13-5 ¶¶ 46-47). Since the initial filing, underlying plaintiffs in the Castellano and Nguyen Actions stipulated consolidation with the Zannettino Action. (Dkt. 1 ¶¶ 19-20); *Zannettino v. Igloo Prods. Corp.*, 25

C 744, Dkts. 29-30 (C.D. Cal. May 2025). The plaintiffs in the underlying individual class actions sought actual, general, incidental, special, statutory and consequential damages. (Dkt. 1 ¶ 22).

Various underlying plaintiffs—Trainor, Zannettino, Castellano, and Nguyen, plus two more named plaintiffs, Jose Barragan and Kristen Riffle—later filed a Consolidated Class Action (the "Underlying Consolidated Class Action"). (Dkt. 1 ¶ 23; Dkt. 1-6). The Underlying Consolidated Class Action repeats several allegations made in the underlying individual class Actions, including claims that the Cooler pinched the underlying plaintiffs' fingers. (Dkt. 1-6 ¶¶ 10, 68-69, 77-78, 85).

Because some of these actions have merged, only two individual class actions persist. Igloo complains, however, that Allianz breached its duty to defend *all* of the underlying class actions. (Dkt. 1 ¶¶ 33-34). Accordingly, the present dispute applies to Allianz's lack of representation of all five actions—not just the two remaining cases. As such, the Court addresses all five underlying actions.

## II. The Current Dispute

From October 1, 2021, through October 1, 2025, Allianz issued Dometic, Igloo's parent company, four commercial general liability policies (the "Policies"). (*Id*. 1 ¶¶ 11; Dkt. 1-2; Dkt. 1-3; Dkt. 1-4; Dkt. 1-5). The Policies named Igloo as an insured party, providing coverage for that time period. (*Id*. 1 ¶¶ 11-12; Dkt. 1-2; Dkt. 1-3; Dkt. 1-4; Dkt. 1-5). The Policies provided that Allianz would reimburse Igloo for "damages because of 'bodily injury'" and guaranteed that Allianz would defend Igloo against any lawsuit seeking those damages. (Dkt. 1-2 at 14; Dkt. 1-3 at 15; Dkt. 1-4 at 15; Dkt 1-5 at 15). The Policies further stated that coverage applied to bodily injury only if it was caused by an "occurrence." oOccurrence is defined as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 1-2 at 14, 28; Dkt. 1-3 at 15, 29; Dkt. 1-4 at 15, 29; Dkt 1-5 at 15, 29).

Igloo timely notified Allianz of the individual class actions and the consolidated class cction. (Dkt. 1 ¶ 31). Allianz denied coverage for all six class actions, reasoning that none of them sought damages for any bodily injuries the underlying plaintiffs sustained. (*Id*. ¶¶ 32-33). Igloo subsequently filed this lawsuit, alleging that Allianz breached its contractual duty to defend Igloo in each of the underlying individual class actions (Count I) and the consolidated class action (Count II), and seeking a declaratory judgment that Allianz has a duty to defend Igloo against the Underlying Consolidated Class Action (Count III). (*Id*. at 7-10). Allianz moves to dismiss, arguing that it did not have a duty to defend the actions because "no portion of [[actions] seek potentially-covered damages 'because of bodily injury[,]'" and thus, Igloo fails to state a claim that Allianz breached the Policies. (Dkt. 13 at 1).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court accepts "well-pleaded allegations of fact as true and draw[s] all reasonable inferences in the plaintiff's favor." *Miao v. United Airlines, Inc*., 164 F. 4th 622, 623 (7th Cir. 2026). The Court will "not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist*., 112 F.4th 472, 475 (7th Cir. 2024). "[T]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (internal citation omitted).

A written instrument attached to a pleading as an exhibit is considered part of the pleading. Fed. R. Civ. P. 10(c); *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020). "Ordinarily, when adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). The incorporation-by-reference doctrine provides an exception to this rule, allowing courts to "consider authentic documents not attached to a complaint so long as they are referenced in it and are central to the plaintiff's claim." *Muthana v. Mullin*, 171 F.4th 967, 974 (7th Cir. 2026) (citing *Fin. Fiduciaries, LLC*, 46 F.4th at 663). The Court may therefore consider documents, like exhibits, attached to the pleadings to supplement parties' allegations.

**DISCUSSION**

The Court, sitting in diversity, applies Illinois law to this analysis. *Great W. Cas. Co. v. Nationwide Agribusiness Ins. Co.*, 167 F.4th 448, 455 (7th Cir. 2026) (citing *Hess v. Biomet, Inc.*, 105 F.4th 912, 917 (7th Cir. 2024)). In analyzing insurance policy language, Illinois courts apply the same rules that they would to any contract interpretation question. *Great W. Cas. Co.*, 167 F.4th at 455. In Illinois, breach of contract requires four things: "(1) a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by defendant; and (4) resulting injury to the plaintiff." *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 520 (7th Cir. 2025).

The first two elements are not at issue. Igloo and Allianz agree that the Policies are enforceable contracts and that Allianz owed a duty to defend Igloo against claims seeking damages "because of bodily injury." (Dkt. 1 ¶ 13; Dkt. 13 at 2, 5) (cleaned up). There is no dispute as to Igloo's performance. (*See generally* Dkt. 1; Dkt. 13). Parties, however, disagree as to the last two

elements. Igloo asserts that, by neglecting to defend it from the Underlying Class Actions, Allianz breached the Policies. Thus, Igloo claims, it has incurred damages including attorneys' fees and other litigation related costs. (Dkt. 1 ¶¶ 42, 49). Allianz argues that it had no duty to defend Igloo in the Underlying Class Actions because the underlying lawsuits against Igloo did not seek damages "because of bodily injury." (*Id.* ¶¶ 4-6; Dkt. 13 at 1). Allianz asserts that, because it had no duty to defend against the Underlying Class Actions, Igloo's complaint fails to state a claim under which relief may be granted. (Dkt. 13 at 1-2). Whether Igloo has sufficiently pleaded a breach of contract claim therefore turns on whether Allianz had a duty to defend Igloo against the actions.

Although Igloo's Complaint blends its concerns as to all individual class actions into one Count (Count I), the Court may consider each underlying claim independently and grant Allianz's motion to dismiss only as to the underlying class actions that Allianz did not have a duty to defend — and vice versa. *See Remprex, LLC v. Certain Underwriters at Lloyd's London*, 2023 IL App (1st) 211097, ¶ 1, *as corrected* (Apr. 17, 2023) (motion to dismiss insured's single breach of contract claim alleging insurer refused to defend two underlying lawsuits was properly granted as to one lawsuit but improperly granted as to the other); *Cruz v. Cnty. of Dupage*, 1998 WL 832642, at *7 (N.D. Ill. Nov. 23, 1998) (granting in part and denying in part motion to dismiss single count with two claims where insurer had a duty to defend but the duty to indemnify was non-justiciable). Accordingly, the Court considers dismissal for each of the underlying class actions, not just for each individual Count. For the reasons below, Igloo states a claim as to three of the five Individual Class Actions (portions of Count I), as to the consolidated class action (Count II), and as to Count III.

## I. Four of the Six Underlying Class Actions Plausibly Allege Bodily Injury, Triggering Allianz's Duty to Defend.

Under Illinois law, contract interpretation is a question of law. *Daniels v. Hughes*, 147 F.4th 777, 784 (7th Cir. 2025). To determine whether Igloo states a claim for relief that is plausible on its face, the Court must consider whether the underlying class actions' claims fall within the coverage of the policies. In reviewing Allianz's Policies, the Court's primary objective is to give effect to the intent of the parties by understanding the language that the policies themselves use. *See Great W. Cas. Co.*, 167 F.4th at 455; *Acuity v. M/I Homes of Chicago, LLC*, 234 N.E.3d 97, 105 (2023)).

"The threshold for pleading a duty to defend in Illinois is low." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1043 (7th Cir. 2024). To determine if Allianz owes Igloo a duty to defend, the Court compares the allegations in the underlying complaints themselves with the relevant provisions of the Policies. *United Fire & Cas. Co. v. Prate Roofing & Installations*, LLC, 7 F.4th 573, 580 (7th Cir. 2021) (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 107, (1992)).

Whether Allianz had a duty to defend Igloo depends on the facts alleged in the actions—not the legal theories raised by those facts. *St. Paul Guardian Ins. Co.*, 99 F.4th at 1043; *Lexington Ins. Co. v. Chicago Flameproof & Wood Specialties Corp.*, 950 F.3d 976, 980 (7th Cir. 2020). In considering the applicability of the duty to defend, the Court looks only to the "four corners of the insurance polic[ies] and the "four corners of the complaint for which defense is sought[.]" *St. Paul Guardian Ins. Co.*, 99 F.4th at 1043. The facts pleaded within the underlying complaints must be "within or potentially within" the Policies' coverage to invoke the duty to defend. *Federated Mut. Ins. Co.* 983 F.3d at 314. The Court "must liberally construe the underlying complaint and the insurance policies in favor of the insured." *Westfield Ins. Co. v. Nat'l Decorating Serv.*, Inc., 863

F.3d 690, 695 (7th Cir. 2017). Allianz can only refuse to defend Igloo if "it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *United Fire & Cas. Co.*, 7 F.4th at 580-81 (internal citation omitted).

The crux of the parties' dispute is whether the underlying class actions' allegations of bodily injury are sufficient to trigger Allianz's duty to defend Igloo against claims seeking damages "because of" bodily injury. (Dkt. 1 ¶¶ 38-41, 45-48; Dkt. 13 at 5). Allianz concedes that at least *some* of the underlying plaintiffs allege bodily injury. (Dkt. 13 at 3). Still, Allianz maintains that it had no duty to defend based on the "causes of action" and "liability theories" asserted in the Underlying Class Actions. (See e.g., *Id.* at 3, 5). The Court looks, however, at the factual allegations themselves. *See supra* at 7-8.

Under the Illinois' duty to defend standard, Igloo has pleaded sufficient facts that, taken as true, support the claim that Allianz breached its duty to defend as to four of the six actions. The Court starts, however, with the two actions that did not trigger Allianz's duty to defend because they foreclosed coverage: the Holton/Miranda and Castellano Actions. In defining its class, the Holton/Miranda Action expressly excludes claims for personal injury. (Dkt. 13-3 ¶ 43). Accordingly, there is no way that the underlying plaintiffs sought damages "because of" bodily injury. Because an insurer may refuse to defend "'if the allegations of the underlying complaint preclude any possibility of coverage[,]'" *Scottsdale Ins. Co.*, 972 F.3d at 919 (quoting *Illinois Tool Works Inc. v. Travelers Cas. & Sur. Co.*, 2015 IL App (1st) 132350, ¶ 27, 26), it is "clear from the face of the underlying complaint" that the allegations in the Holton/Miranda Action cannot potentially fall within policy coverage. *United Fire & Cas. Co.*, 7 F.4th at 580-81. So too, with the Castellano Action. Although Castellano alleges that the Cooler pinched his son, the allegations explicitly clarify that "his son did not suffer any injuries." (Dkt. 13-4 ¶¶ 43-44). In other words,

unlike the Trainor, Zannettino, Nguyen, and actions, *infra* at 9-10, Castellano does not allege bodily injury. For the reasons above, Igloo does not plead sufficient facts to state a claim that Allianz had a duty to defend it in the Holton/Miranda or Castellano actions.

The Court now turns to the four remaining actions, all of which plausibly trigger Allianz's duty to defend. Injurious bodily contact constitutes bodily injury. *See Pro. Sol. Ins. Co. v. Giolas*, 297 F. Supp. 3d 805, 814 (N.D. Ill. 2017). To trigger the duty to defend, the actons must allege contact that equals bodily injury, (*see e.g.*, Dkt. 1-2), and the allegation must only be *potentially* within coverage. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 314 (7th Cir. 2020) (emphasis added).

The Trainor and Zannettino Actions both allege injurious bodily contact through underlying plaintiff Trainor's allegations that she was pinched, "causing discomfort and potential injury." (Dkt. 13-1 ¶ 22; Dkt. 13-2 ¶ 50). Through these claims, she alleges bodily injury. Although the phrasing of "potential injury" does not expressly allege resultant physical harm, it also does not foreclose the possibility, so it is at least "potentially" within coverage.

In the Nguyen Action, the underlying plaintiff (Nguyen) similarly alleged that she experienced pinching. (Dkt. 13-5 ¶ 46). While the phrasing of the allegation—that she stopped using the Cooler "to ensure that she and her child were not injured by it" (*Id.* ¶ 47)—could mean she stopped using the Cooler before suffering injury, it could just as likely be interpreted to mean that she wanted to prevent additional injuries from the pinching. Because courts interpret complaints liberally in favor of finding a duty to defend, *United Fire & Cas. Co.*, 7 F.4th at 580,

the Court finds that Igloo has offered enough facts to show that it is plausible that the Policies encompass the Nguyen Action too.

Lastly, the underlying consolidated class Action contains sufficient allegations to trigger Allianz's duty to defend. First, it claims that underlying plaintiff Nguyen experienced pinching. (Dkt. 1-6 ¶¶ 77-78). It further asserts that the Coolers pinched underlying plaintiff Barrigan. (*Id.* ¶ 85). The first allegation alone would activate Allianz's duty. *See Great Am. Ins. Co.*, 104 F.4th 1011, 1017-18 (7th Cir. 2024) (affirming insurer's duty to defend even if only one theory of recovery is potentially within coverage). Thus, Igloo offers enough facts that, taken as true, allege bodily harm.

Allianz presents several theories as to why it has no duty to defend any of the Underlying Class Actions — none of which are fruitful. First, Allianz claims that it has no duty to defend the actions because they "do not seek — or purport to seek — damages for any bodily harms that any of the named plaintiffs . . . may have suffered." (Dkt. 13 at 3-4). This is not the proper analysis for a duty to defend. As the Court has discussed, it does not matter what legal theories underlie the underlying class actions. *Supra* at 7-8; *Lexington Ins. Co.*, 950 F.3d at 980.

Allianz also incorrectly argues that *all* of the Underlying Class Actions foreclose coverage because "*some* of the statutes under which the class plaintiffs seek recovery specifically preclude recovery of 'bodily injury' damages." (Dkt. 13 at 12) (emphasis added). Allianz relies on *Voelker v. Porsche Cars N. Am., Inc.*, in which the court found that the plaintiff could not recover for personal injury under the Magnuson-Moss Act. 353 F.3d 516, 525 (7th Cir. 2003). *Voelker* did not, however, find that the plaintiff could not recover for bodily injury under a separate cause of action that did not bar recovery. Allianz itself acknowledges that only *some* of the underlying

plaintiffs' causes of action bar recovery for bodily injury. Thus, unlike the plaintiffs in *Voelker*, the underlying plaintiffs here left open a path for recovery.

Allianz also argues that "tangential references to bodily harm" do not invoke an insurer's duty to defend. (Dkt. 13 at 8). Allianz supports its argument by pointing to cases where the underlying plaintiffs alleged bodily injury of *other* people — not their injuries. (*Id*. at 6-9) (citing *Diamond State Ins. Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d 471, 477 (1993) (holding that the state's allegations of its employees' bodily injuries did not trigger insurer's duty to defend because the state did not bring action on behalf of its employees.); *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 696 (7th Cir. 2009) (underlying plaintiffs' allegations of bodily injury to residents of nursing home failed to trigger insurer's duty to defend because underlying plaintiffs could not seek damages for bodily injury that did not occur to them)). As Igloo correctly points out, these cases are distinguishable. Whereas the underlying plaintiffs in those cases did not allege that they *themselves* were hurt, the underlying plaintiffs in the non-foreclosed underlying class actions do.

Further, Allianz relies on *Medmarc Cas. Ins. Co. v. Avent Am., Inc.* to argue that, even if the underlying plaintiffs *could* amend their complaint to seek damages under a theory of recovery not already asserted, the possibility alone is not sufficient to establish the duty to defend. (Dkt. 13 at 9-10) (citing *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607 (7th Cir. 2010). Allianz contends that the *Medmarc* court found that there was no duty to defend because the underlying plaintiffs did not assert a specific "theory of recovery" for damages for bodily injury. (Dkt. 13 at 9-10). This misrepresents *Medmarc*. Rather, the court in *Medmarc* found that there was no duty to defend because the plaintiffs in *Medmarc* raised no allegations of bodily injury at all. *See Medmarc Cas. Ins. Co.*, 612 F.3d at 610 (the underlying complains never alleged that the plaintiffs or their

children suffered "any . . . negative health effects" caused by the allegedly defective products). Here, by contrast, the four non-foreclosed underlying class actions all allege bodily injury.

**II. It Is Plausible That An "Occurrence" Caused The Alleged Bodily Injuries**

The Court has authority to review the parties' entire contract, including portions the parties do not address in their briefs. *See Landmark Am. Ins. Co. v. NIP Grp., Inc.*, 2011 IL App (1st) 101155, ¶ 75 (emphasizing the Court's duty to read every provision when interpreting an insurance contract). Indeed, the Court must not render any provision of the Policies meaningless. *Great W. Cas. Co.*, 167 F.4th at 455. The Court therefore undertakes an analysis of the term "occurrence" as used in the Policies as it relates to the alleged bodily injuries and concludes that Igloo offers enough facts that, taken as true, show that it is plausible that an "occurrence" caused the alleged bodily injuries in the four non-foreclosed Underlying Class Actions.

The Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 1-2 at 28; Dkt. 1-3 at 29; Dkt. 1-4 at 29; Dkt 1-5 at 29). To determine if an "occurrence" was an "accident," Illinois courts consider "whether the injury was expected or intended[.]."*Federated Mut. Ins. Co.*, 983 F.3d at 316. If the underlying plaintiffs allege actual knowledge of past harm or propensity for harm, then the allegations of subsequent injuries are considered expected or intended, and thus, not caused by an "occurrence." *See Empire Indem. Ins. Co. v. Chicago Province of Soc. of Jesus*, 2013 IL App (1st) 112346, ¶¶ 27, 40-41. On the other hand, negligent conduct or failure to exercise reasonable care generally satisfies the "occurrence requirement[.]" *Lexington Ins. Co.*, 950 F.3d at 981. Conclusory allegations that the insured "knew or should have known of the consequences of its deliberate act" do not prevent the Court from finding an occurrence. *Id.* at 982. In brief, an

"occurrence" exists if a product—here, the Coolers—caused accidental harm to the underlying plaintiffs.

Conclusory allegations aside, all four non-foreclosed underlying class actions include claims that Igloo was negligent or failed to exercise reasonable care with respect to the defective handles. The Zannettino Action alleges that Igloo "was reckless in not knowing" about the defects (Dkt. 13-2 at ¶ 141) and that Igloo "knew or should have known" that the Coolers were defective. (*Id.* at ¶ 177). The Consolidated Underlying Class Action also alleges the possibilities of recklessness and negligence, specifically asserting that that Igloo was reckless by not conducting adequate testing (Dkt. 1-6 ¶ 56), and that Igloo knew or should have known about the defective handle. (Dkt. 1-6 ¶ 241). So too, the Nguyen Action claims that Igloo knew or should have known of the defect. (Dkt. 13-5 ¶ 13). The Trainor action maintains that Igloo negligently manufactured and improperly oversaw the Coolers' production. (Dkt. 13-1 ¶ 179). Allegations that a party "knew or should have known" about something invoke negligence. *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1312 (7th Cir. 2025), *reh'g denied*, 2025 WL 462078 (7th Cir. Feb. 11, 2025) (cleaned up) ("We have repeatedly acknowledged that 'knew or should have known' is a 'negligence' standard[.]"). The Court will not find the absence of an occurrence where allegations describe negligence. *See Country Mut. Ins. Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 54, 58 ("[I]t should be the rare case that we are so confident that the allegations could not possibly be considered to describe negligent conduct, and can only be credibly characterized as intentional conduct, that we can say that the allegations in an underlying complaint could not even *potentially* fall within the coverage of a policy.") Accordingly, all four remaining underlying class actions—the Trainor,

Zannettino, Nguyen, and Underlying Class Actions—plausibly allege that an "occurrence" created the underlying plaintiffs' supposed injuries.

**CONCLUSION**

For the reasons above, the Court grants in part and denies in part Allianz's Motion to Dismiss. It GRANTS the motion only as to the Holton/Miranda and Castellano actions raised in Count I. It DENIES the motion as to the remaining three underlying individual class Actions in Count I, as to the Consolidated Class Action

Virginia M. Kendall
United States District Judge
October 14, 2026